UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRUCE HYMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:14-CV-000485-SPM |
| ) | |
| ADOLPHUS WARREN, ) | |
| KATE STRICKLAND, ) | |
| MICHAEL MCKEE, ) | |
| NICHOLAS POST, ) | |
| LARRY CRAWFORD, and ) | |
| ROBERT LOYND, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This case involves Plaintiff Bruce Hymes's ("Plaintiff's") claims that several employees of the St. Charles County Detention Center ("SCCDC") violated his rights under the Eighth and Fourteenth Amendments by failing to protect him and/or disregarding his serious medical needs while he was being detained at SCCDC. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 43).

Defendants Adolphus Warren, Kate Strickland, Michael McKee, Nicholas Post, and Larry Crawford have filed a motion for summary judgment (Doc. 66), and Defendant Dr. Robert Loynd has filed a second motion for summary judgment (Doc. 67). For the following reasons, the Court will grant both motions.

I. **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Hill v. Walker,* 737 F.3d 1209, 1216 (8th Cir. 2013). A dispute about a material fact is "genuine" when the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.* at 324. "A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate.'" *Pedersen v. Bio-Medical Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010)).

## II. FACTS[1]

Plaintiff Bruce Hymes ("Plaintiff") was arrested and detained in the St. Charles County Detention Center ("SCCDC") in St. Charles, Missouri on August 4, 2011. He was charged with invasion of privacy, with the charges arising from an incident in which an employee of his tattoo parlor reported to the police that there was a camera in the ladies' restroom. During his detention and for several years prior to his detention, Plaintiff was married to a St. Charles City police officer, Debra Young.

---

[1] These facts are taken from the Defendants' statements of undisputed material facts and the exhibits attached thereto, Plaintiff's responses in opposition to the motions for summary judgment and the exhibit attached thereto, and Plaintiff's First Amended Complaint, subscribed as true under penalty of perjury pursuant to 28 U.S.C. § 1746. They are presented in the light most favorable to Plaintiff.

On March 15, 2012, Plaintiff was pushed over a stool by his cellmate. He testified that he considered this altercation to be a misunderstanding and a joke between him and his cellmate.

On or about April 2, 2012 an individual wrote on the wall in Plaintiff's cell block, "The creep in Cell 1 is videotaping you." Prior to this incident, Plaintiff had not been threatened by any inmates.[2] Plaintiff reported this to Defendants Warren and McKee. Plaintiff stated that he told Defendant Warren that he was not "tripping on it" and that "it wasn't that—that big a deal." Defendant Warren asked him if he had a problem with the writing on the wall, and Plaintiff replied by stating, "No, I erased it off the wall." Plaintiff did not report the message to anyone else, and he did not ask to be placed in protective custody.[3] Plaintiff testified that nothing in the writing threatened him with physical harm.

On or about April 3, 2012, an individual wrote the same message on the wall in Plaintiff's cell block again. Plaintiff never reported the second message to any of the defendants or to any other SCCDC employees, and he did not ask to be placed in protective custody.

On April 5, 2012 Plaintiff was assaulted in a "blindside hit" by two inmates. Defendant Strickland was responsible for supervising the unit at that time, and Plaintiff testified that before the assault he saw her texting on her phone.

The inmates involved in the assault were later identified as Robert Martin and Steven Scott. Plaintiff could not recall having any interactions with Martin or Scott prior to the assault. After the incident, Martin told SCCDC personnel that he believed that his 19-year-old daughter had been one of the victims filmed by Plaintiff. Also after the incident, Scott told SCCDC

---

[2] Plaintiff alleged in his First Amended Complaint that he reported to Defendants Warren and McKee that he had been threatened by an SCCDC corrections officer in early 2012. However, at his deposition, he testified that this occurred after the assault that gave rise to this case.

[3] Plaintiff alleged in his First Amended Complaint that he requested protective custody after this incident. However, he testified in his deposition that he never requested to be placed in protective custody.

personnel that Plaintiff had acted inappropriately while doing a piercing on Scott's girlfriend. Neither Martin's nor Scott's inmate records show any reports of violence or assaults directed toward Plaintiff or any other SCCDC detainees prior to the April 5, 2012 attack.

Plaintiff suffered multiple facial fractures and extensive bruising from the assault, and he required reconstructive surgeries. In the weeks after the assault, Plaintiff was examined and treated by several doctors, including Defendant Dr. Loynd (medical director at SCCDC). Dr. Loynd examined Plaintiff on multiple occasions after the assault, prescribed pain medication and other medications for him, and arranged for him to see other physicians. After Plaintiff had surgery, Plaintiff complained of some hearing problems in his left ear, and tests performed by Dr. Loynd and others showed some hearing loss. On May 22, 2012, Plaintiff's ear, nose, and throat doctor, Dr. Burk, recommended that Plaintiff have a CT and MRI of the head "to rule out cpa tumor." On May 25, 2012, Dr. Loynd noted, "Needs MRI for complete workup, but this can be done when released—<u>no</u> emergency" and "[inmate] advised to have MRI when released." Dr. Loynd also noted that Plaintiff's level of hearing loss was not sufficient to warrant a hearing aid. Plaintiff never complained of vision problems to Dr. Loynd, and there is no reference to vision complaints in Dr. Burk's notes. It is Dr. Loynd's professional opinion that a CT and/or MRI was not an urgent or emergent medical need for Plaintiff in late May 2012.

SCCDC has a grievance procedure set forth in the *St. Charles County Department of Corrections Inmate/Detainee Handbook Rules and Regulations* ("Handbook"). All inmates detained in the jail are given a copy of these rules and regulations. Section III, Paragraph E of the Handbook states, "[Inmates] have a right to make requests and complaints to the Facility Administration by means of the Inmate/Detainee Concern Form. . . The Inmate/Detainee Concern Form shall be forwarded by the staff to the Operations Officer, and the specific concern

will be addressed by the appropriate staff member. . . " Plaintiff never completed or submitted an Inmate/Detainee Concern Form to the Facility Administration related to the April 5, 2012 assault or related incidents.

## III. DISCUSSION

In his First Amended Complaint, Plaintiff alleges three counts under 42 U.S.C. § 1983: (I) that Defendants Crawford and Post violated his Eighth and Fourteenth Amendment rights when they failed to provide protective custody to Plaintiff despite their knowledge of the danger to him; (II) that Defendants McKee, Warren, and Strickland violated his Eighth and Fourteenth Amendment rights when they failed to provide protective custody to Plaintiff despite their knowledge of the danger to him and failed to properly supervise the inmates in his unit; and (III) that SCCDC's medical director, Defendant Dr. Loynd, violated his Eighth and Fourteenth Amendment rights when he failed and/or refused to provide medical care to Plaintiff despite his knowledge of Plaintiff's serious medical needs.

Defendants have moved for summary judgment on all counts, arguing that they are entitled to judgment as a matter of law on the merits and that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). The Court considers each argument below.

### A. Defendants Are Entitled to Summary Judgment on the Merits as to Each of Plaintiff's Claims

#### 1. Counts I and II: Failure to Protect (Defendants Crawford, Post, Strickland, Warren, and McKee)

The Eighth Amendment requires prison officials to "'provide humane conditions of confinement' by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994)); *see also Holden v. Hirner*, 663 F.3d 336, 340-41 (8th Cir. 2011). Custodians of pretrial detainees have "a comparable duty to protect" that arises under the Due Process Clause of the Fourteenth Amendment. *Schoelch*, 625 F.3d at 1046. The Eighth Circuit has applied the failure-to-protect standards of the Eighth Amendment to failure-to-protect claims brought by pretrial detainees. *See id.; Walton v. Dawson*, 752 F.3d 1109, 1117-18 (8th Cir. 2014); *Holden*, 663 F.3d at 341.

To prove that prison officials violated his Fourteenth Amendment rights by failing to protect him, Plaintiff must satisfy a two-prong test. First, Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. This prong is viewed objectively. *Id.* Second, Plaintiff must prove that the defendant prison official acted with deliberate indifference to the substantial risk of serious harm. *Id.* This second requirement is subjective. *Id.* at 837-38. To be found deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is "something more than negligence but less than actual intent to harm"; it "requires proof of a reckless disregard of the known risk." *Holden*, 663 F.3d at 341 (quotation marks omitted). Whether a risk was known to the defendant must be considered from the defendant's perspective at the time in question, "not with hindsight's perfect vision." *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir. 1998) (citing *Williams v. Nebraska State Penitentiary,* 57 F.3d 667, 669 (8th Cir. 1995)). Some of the factors relevant to assessing a defendant's subjective awareness of a substantial risk of serious harm include whether the defendant knew about threats against the plaintiff, whether the plaintiff reported to the defendants that he felt in danger or wanted protection, whether the plaintiff's assailant had a known propensity for violent behavior, and

whether the defendants were aware of a history of adverse interactions between the plaintiff and his assailant. *See generally Pagels v. Morrison*, 335 F.3d 736, 740-41 (8th Cir. 2003); *Schoelch*, 625 F.3d at 1047-48.

The Court need not address the first prong of the failure-to-protect inquiry (incarceration under conditions posing a substantial risk of serious harm), because it is clear that Defendants are entitled to summary judgment based on the second prong (deliberate indifference). Even when the facts are viewed in the light most favorable to Plaintiff, there is insufficient evidence for a reasonable jury to find that Defendants were subjectively aware of a substantial risk to Plaintiff.

Here, it is undisputed that several of the factors relevant to a finding of subjective awareness of risk are absent. There is no evidence that Defendants were aware of any threats of physical harm directed toward Plaintiff from any other inmates. Plaintiff never reported to any of the Defendants that he felt he was in danger or that he wanted to be placed in protective custody. There is no evidence that any of the Defendants were aware that either of Plaintiff's assailants had a propensity for violent behavior; to the contrary, Martin's and Scott's records show no reports of any violence or assaults toward any inmates prior to the attack on Plaintiff. There is also no evidence that any of the Defendants were aware of any history between Plaintiff and his assailants that might have suggested a motivation for the attack. Although Martin and Scott reported *after* the attack that Plaintiff had victimized their family or friends, there is no evidence that any Defendants were aware of that history *before* the attack.

Plaintiff argues that Defendants were subjectively aware of a substantial risk of harm to Plaintiff based on their awareness of three facts: (1) the April 2, 2012, incident in which someone wrote, "The creep in Cell 1 is videotaping you" on Plaintiff's cell block wall; (2) Plaintiff's marriage to a police officer; and (3) the "scintillating" nature of the charges against Plaintiff. The

Court finds that none of these facts, alone or in combination, are sufficient for a jury to find that Defendants were subjectively aware of a substantial risk to Plaintiff.

The Court first considers the writing on Plaintiff's cell block wall, which Plaintiff reported to Defendants Warren and McKee. That message, "The creep in Cell 1 is videotaping you," suggested that one or more of Plaintiff's fellow inmates had some animosity toward him. However, it contained no warnings, threatening language, or indication of intent to harm Plaintiff that would show a substantial risk to him.[4] Indeed, it is clear that Plaintiff himself did not draw an inference from this message that he was at any substantial risk of harm, and he communicated his lack of serious concern to Defendants. Regarding the message, Plaintiff told Defendant Warren, "It wasn't that—that big a deal" and "I ain't tripping on it." When Defendant Warren asked Plaintiff if he had a problem with the writing on the wall, Plaintiff responded, "No, I erased it off the wall." Plaintiff did not ask Defendants to place him in protective custody after seeing this message. Furthermore, when the same message re-appeared a day or two later, Plaintiff did not even report it to anyone. Given the absence of threatening language in the message, combined with the fact that Plaintiff did not draw an inference from the message that his safety was at risk (even when the message was repeated) and told prison officials it "wasn't that big a deal," this message does not provide sufficient evidence from which a jury could conclude that Defendants were subjectively aware of a substantial risk of harm to Plaintiff. *Cf. Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) (holding that an inmate's own statements to prison officials that a prisoner posed no risk to him would bar his failure-to-protect claim).

---

[4] Notably, even if this writing could somehow be characterized as a "threat," awareness of threat by another inmate does not necessarily show awareness of a substantial risk of harm. The Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Pagels v. Morrison*, 335 F.3d 736, 740-41 (8th Cir. 2003) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998)).

Plaintiff also argues that Defendants knew that inmates had antipathy toward Plaintiff because Plaintiff's wife, Debra Young, was a police officer. However, Plaintiff acknowledged at his deposition that he never told any employees of SCCDC that he was married to Ms. Young, and Defendants submitted affidavits stating that they did not know that Plaintiff was married to Ms. Young. Plaintiff's only attempt to controvert this evidence is his conclusory assertion that his relationship with a police officer was the subject of television news reports. However, there is no evidence in the record to suggest that any of the Defendants ever saw those reports. Thus, there is insufficient evidence in the record from which a jury could conclude that Defendants knew Plaintiff was married to a police officer, and this fact cannot support a finding of Defendants' subjective awareness of risk. Moreover, even assuming, *arguendo*, that Defendants *were* aware of Plaintiff's marriage to a police officer, the Court finds nothing in the record to support the assertion that Defendants inferred from Plaintiff's wife's employment that Plaintiff was at risk of harm from other inmates. Significantly, Plaintiff himself apparently did not draw any such inference, because he never requested that he required protective custody based on his marriage.

Plaintiff also suggests that the "scintillating" nature of the charges against him contributed toward Defendants' awareness that he was at risk. However, Plaintiff does not explain how the nature of the charges against Plaintiff suggests any substantial risk of harm to him. Plaintiff does not cite any authority to support the proposition that an inmate charged with invasion of privacy is necessarily at a substantial risk of harm from other inmates, nor does he cite any evidence to suggest that Defendants drew an inference that the nature of the charges placed Plaintiff at a substantial risk of harm. Moreover, again, Plaintiff himself apparently did

9

not draw any inference that he was at a substantial risk of harm because of the invasion of privacy charge.

Plaintiff makes one final argument with respect to Defendant Strickland specifically, which is that she "deliberately ignored the attack on Mr. Hymes while it was occurring" because she was on her cell phone while on duty. However, a finding of deliberate indifference requires subjective awareness of the risk, and Plaintiff presents no evidence that Defendant Strickland was actually aware of the attack while it was occurring or was aware before the attack that Plaintiff was at risk from his fellow inmates. At most, Defendant Strickland being on her cell phone instead of supervising the inmates when the assault occurred constituted negligence or gross negligence, not deliberate indifference. *See also Campbell v. Harris,* No. 5:11CV00021 JLH/JTR, 2012 WL 3204912, at *6 (E.D. Ark. Aug. 3, 2012) (a correctional officer who temporarily abandoned her post was at most negligent, not deliberately indifferent). It is well established that mere negligence, even gross negligence, is not sufficient to establish deliberate indifference. *Pagels,* 335 F.3d at 740; *Tucker v. Evans*, 276 F.3d 999, 1002 (8th Cir. 2002).

In sum, even when the facts are viewed in the light most favorable to Plaintiff, there is insufficient evidence from which a reasonable jury could find that Defendants Crawford, Strickland, Post, Warren, or McKee were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, or that they drew such an inference. Therefore, there are no genuine issues of material fact as to whether these defendants violated Plaintiff's Fourteenth Amendment rights by failing to protect him, and these defendants are entitled to summary judgment on Counts I and II.

### 2. *Count III: Failure to Provide Medical Care (Defendant Dr. Loynd)*

In Count III, Plaintiff alleges that Defendant Loynd violated his Eighth and Fourteenth Amendment rights when he failed and/or refused to provide medical care to Plaintiff despite having knowledge of Plaintiff's serious medical needs. In his motion for summary judgment, Dr. Loynd argues that he provided proper medical care to Plaintiff and was not deliberately indifferent to his medical needs.

The Eighth Amendment protects prison inmates from deliberate indifference to their serious medical needs, and the Due Process clause of the Fourteenth Amendment provides similar protection to pretrial detainees. *Pietrafeso v. Lawrence Cnty.,* 452 F.3d 978, 982 (8th Cir. 2006). To succeed on a claim of deliberate indifference to serious medical needs, Plaintiff must satisfy a two-prong test. First, Plaintiff must show that he had an objectively serious medical need, which is one "diagnosed by a physician as requiring treatment" or one "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014). (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Second, Plaintiff must show that Dr. Loynd was deliberately indifferent to that need, which requires that he "actually knew of the need but deliberately disregarded it." *Flores v. United States,* 689 F.3d 894, 903 (8th Cir. 2012); *see also Scott*, 742 F.3d at 340. The second prong is subjective. *Scott*, 742F.3d at 340. "This showing requires 'a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health.'" *Scott*, 742 F.3d at 340 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). "A mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Id.* (quotation marks omitted). Moreover, "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate

indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014). Rather, "[a]n inmate must demonstrate that a prison doctor's actions were 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'" *Id.* (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir.1997)).

Plaintiff must also show that Dr. Loynd's "unconstitutional actions in fact caused [Plaintiff's] injuries." *Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006). "Proof of causation by expert testimony is required when a plaintiff is complaining about treatment of a sophisticated injury." *Id.*

Plaintiff argues that in late May 2012, he had an objectively serious medical need for further MRI or CT tests to address his possible hearing and vision loss, as shown by Dr. Burk's notes recommending that Plaintiff have a CT and MRI of the head "to rule out cpa tumor." Plaintiff argues that because Dr. Loynd did not order that this testing be done, Dr. Loynd was deliberately indifferent to his serious medical needs. Plaintiff alleges that because of Dr. Loynd's decision not to order CT or MRI scans of his head, he suffered permanent loss of peripheral vision and hearing.

Even assuming, *arguendo*, that Plaintiff had an objectively serious need for MRI or CT testing, the record does not contain sufficient facts from which a jury could find that Dr. Loynd acted with deliberate indifference toward that need. The uncontroverted evidence shows that Dr. Loynd treated Plaintiff regularly after the assault, referred him to other doctors, prescribed pain medication, and conducted follow-up visits and testing. Dr. Loynd considered Dr. Burk's recommendation that Plaintiff have a CT and/or MRI of the head to rule out a CPA tumor, but believed there was "no emergency" regarding this testing and so advised Plaintiff to have the MRI when he was released. Consistent with those notes, Dr. Loynd states in his affidavit that it is

his professional opinion that a CT and/or MRI in late May 2012 was not an urgent or emergent medical need for Plaintiff. Dr. Loynd further states that there was no evidence from April 5, 2012 CT scans that Plaintiff had a CPA tumor, and that even if Plaintiff had a CPA tumor, the vast majority of such tumors are benign and slow moving. Plaintiff points to no evidence in the record to suggest that any of Dr. Loynd's treatment decisions were inappropriate in any way, let alone "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *See Jackson*, 756 F.3d at 1065-66.

In addition, there is no evidence in the record from which a jury could find that Dr. Loynd's failure to order an MRI or CT scan caused any injury to Plaintiff. As Plaintiff acknowledges in his brief, where (as here) medical complaints involve treatment of a prisoner's sophisticated medical condition, expert testimony is required to show causation. *See Gibson*, 433 F.3d at 646-47. Plaintiff argues that summary judgment is inappropriate on the question of causation, because only a "battle of the experts" and a jury can settle the causation question. However, Plaintiff cites no expert evidence in support of his contention that Dr. Loynd's decision not to order this testing in May 2012 caused or contributed to any hearing loss, vision loss, or other injury. Instead, Plaintiff relies only on his own conclusory allegations regarding causation. That is insufficient to establish a genuine issue of material fact for purposes of summary judgment. *See Gibson*, 433 F.3d at 646-47 (affirming summary judgment on a deliberate indifference to serious medical needs claim where Plaintiff had no expert medical testimony to prove that the defendants' actions caused the plaintiff's injuries).

In sum, the Court finds that there are no genuine issues of material fact regarding Dr. Loynd's deliberate indifference to Plaintiff's medical needs, and Dr. Loynd is entitled to summary judgment on Count III.

### B. Plaintiff Failed to Exhaust Administrative Remedies

In the alternative, the Court finds that Defendants are entitled to summary judgment on all counts because Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"). Under the PLRA, an inmate must exhaust available administrative remedies before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir.2002). To properly exhaust administrative remedies, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Bock*, 549 U.S. at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); internal citation omitted). Failure to exhaust administrative remedies is an affirmative defense that must be pleaded and proven by the defendant. *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001). A failure to exhaust administrative remedies may be excused if "officials have prevented prisoners from utilizing the procedures or when officials themselves have failed to comply with the grievance procedure." *Gibson*, 431 F.3d at 341 (internal citations omitted).

Here, it is undisputed that the SCCDC has a grievance procedure set forth in its handbook for detainees and that Plaintiff did not follow that procedure. Plaintiff argues, however, that this should not preclude him from bringing the instant suit. He asserts that the grievance procedures apply to detainees of SCCDC, and that by the time he "recovered from his injuries and was capable of rational thinking," he had been moved out of SCCDC and into a Missouri prison. Essentially, Plaintiff appears to be arguing that that the procedure described in the handbook was not available to him because of his mental condition after the assault. However, the record contains no evidence to support Plaintiff's assertion. The assault occurred on April 5, 2012.

Plaintiff was released from SCCDC to the custody of the Missouri Department of Corrections more than seven months later, on November 11, 2012. There is no evidence whatsoever in the record to suggest that Plaintiff was not capable of "rational thinking" for those seven months. To the contrary, the record shows that only four days after the assault, he was capable of completing a written statement describing in detail his assault and the writings on the wall that preceded the assault.

For the above reasons, Defendants have established that there is no genuine dispute that Plaintiff failed to exhaust his available administrative remedies at SCCDC before filing this lawsuit, and therefore Defendants are entitled to summary judgment on all counts on this ground as well. *See, e.g., Champion v. Akins*, 498 F. App'x 670, 670-71 (8th Cir. 2013) (affirming summary judgment in favor of defendants where prisoner failed to follow prison grievance procedure); *Brannon v. White*, No. 4:10-CV-1704 TCM, 2011 WL 2564763, at *2 (E.D. Mo. June 28, 2011) (granting summary judgment to the defendants based on the prisoner's failure to follow prison grievance procedures).

## IV.  CONCLUSION

For all of the reasons stated above, Defendants have established that they are entitled to judgment as a matter of law on the merits of Counts I, II, and III. In the alternative, Defendants have established that they are entitled to judgment as a matter of law based on Plaintiff's failure to exhaust administrative remedies under the PLRA. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (Docs. 66 & 67) are **GRANTED.** The Court will issue a separate judgment consistent with this Memorandum and Order.

_/s/ Shirley Padmore Mensah_
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of January, 2016.